UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CARROLL,

    Plaintiff,

v.

MARY J. LEE *et al.*,

    Defendants.

No. C08-975RSL

ORDER FOR FURTHER BRIEFING

## I. INTRODUCTION

This matter comes before the Court on "State Defendants' Motion for Summary Judgment," Dkt. #32. Mary J. Lee, Brooks Raymond, Dean Mason, Laura Dyer, Sharon Dahlstrom, and John/Jane Doe I (collectively, "state defendants")[1] each contends that plaintiff's 42 U.S.C. § 1983 claim should be dismissed either because plaintiff cannot demonstrate that state defendants subjected him to a constitutional deprivation or because defendants are entitled to qualified immunity. For the reasons set forth below, the Court orders further briefing from the parties to resolve the issue of qualified immunity.

---

[1] Defendant Kara Dansky is not an employee of the Washington Department of Corrections. She has a separate summary judgment motion pending before the Court. Dkt. #23.

ORDER FOR FURTHER BRIEFING - 1

## II. DISCUSSION

**A. Background**

Plaintiff alleges that, while he was on supervision for Washington State convictions, state defendants caused him to be punished twice for the same violation and to be incarcerated longer than he should have been. Specifically, plaintiff alleges that state defendants miscalculated the "Statutory Maximum Sentence Expiration Date" of one of his sentences. Compl., Dkt. #4 at 4, 11. He told them beginning in February 2005 that they had made a mistake in calculating the sentence expiration for his "A" cause.[2] Id. at 4. Plaintiff alleges that they ignored his complaints and, in March 2005, began conspiring to have him serve more time. Id. at 4-5, 13.

Plaintiff states that he wrote to Department of Corrections ("DOC") officials on June 15, 2005, alleging that Mr. Raymond and Ms. Lee had set him up for two violations, manipulated facts to have him punished twice for the same violation, and conspired to have him confined longer than his sentence required. Id. at 9. He also stated in the letter that he believed that his sentence expired in October 2005. Id. According to plaintiff, the officials either forwarded on his grievances without action or denied them without investigation. Id. at 8-9. Plaintiff received the denial of his grievances on July 15, 2005. Id. at 10.

Plaintiff was again incarcerated for a supervision violation on July 12, 2005. Id. He alleges that, at a hearing on the "A" cause violation on August 30, 2005, DOC employees improperly sought to extend plaintiff's incarceration beyond his sentence expiration date. Id. When plaintiff's counsel objected, the state trial court ordered the DOC employees and the prosecuting attorney to calculate plaintiff's sentence expiration date. Id. The following day, the state trial court determined that plaintiff had hit the statutory maximum on his "A" cause sentence on August 10, 2005; it terminated plaintiff's supervision on that cause and released plaintiff from custody. Dkt. #45, Ex. J, K.

---

[2] Plaintiff refers to his convictions as his "A" cause and "B" cause. Compl. at 4.

ORDER FOR FURTHER BRIEFING - 2

Plaintiff brought this action under 42 U.S.C. § 1983, § 1985, and § 1986 in June 2008. On September 10, 2008, state defendants filed a motion for judgment on the pleadings, contending that all of plaintiff's claims were time-barred. Dkt. #16. They later filed a motion for summary judgment, asserting that plaintiff's sentence had not expired in August 2005 and that they are entitled to qualified immunity. Dkt. #32. Before plaintiff could respond to state defendants' motion for summary judgment, United State Magistrate Judge Tsuchida issued a Report and Recommendation ("R&R"), recommending dismissal of all of plaintiff's claims.[3] Dkt. #37. The Court subsequently vacated the R&R due to a potential conflict of interest, Dkt. #53, and upon *de novo* review, held that while plaintiff's § 1986 claims were time-barred, his § 1983 and § 1985 claims fell within the statute of limitations. Dkt. #59. Because there was no motion before the Court, the Court made no finding on whether plaintiff's claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Id. at 2 n.1. The Court now reviews *de novo* state defendants' motion for summary judgment.

**B. Analysis**

Rule 56 provides that summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden "to show initially the absence of a genuine issue concerning any material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970)), and all evidence must be viewed in the light most favorable to the nonmoving party, Hawkins v. United States, 30 F.3d 1077, 1079 (9th Cir. 1994). Once the moving party makes the required showing, the burden shifts to the

---

[3] Magistrate Judge Tsuchida recommended dismissal of some claims on statute of limitations grounds, and he recommended dismissal of the remaining claims for failure to state a claim upon which relief could be granted.

ORDER FOR FURTHER BRIEFING - 3

nonmoving party to come forward with sufficient evidence to demonstrate that there is a triable issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256-57 (1986).

**1. § 1983 claim**

State defendants first contend that plaintiff's § 1983 claim is not supported by sufficient evidence. Dkt. #32 at 5. Primarily, state defendants contest the trial court's determination that plaintiff had reached the statutory maximum on his "A" cause sentence in August 2005. "State defendants believed then, as they do now, that with the proper tolling periods taken into account . . ., the properly calculated maximum release date was at the earliest December 11, 2005 – over three months after the sentencing court released Mr. Carroll on that cause." Id. at 4. State defendants refer the Court to Washington statutes and a DOC policy directive stating that supervision tolls for any period of time the offender has absented himself without prior approval. See RCW 9.94A.625(2); Dkt. #33, Ex. 1; Dkt. #34, Ex. 1. State authorities also indicate that supervision is tolled while the offender is confined under a separate sentence. See Dkt. # 34, Ex. 1 at 2; State v. Acrey, 97 Wn.App. 784, 788 (1999). State defendants provide a declaration of Jeffrey Brown, plaintiff's community corrections officer from September 2005 to August 2007, stating that, during the course of his supervision, plaintiff failed to report to his community corrections officer on several occasions. Brown Decl., Dkt. #34 ¶ 9. Mr. Brown further states that plaintiff was in confinement on an unrelated matter for over a month during his supervision. Id. According to Mr. Brown, "[e]ach of these time periods represent periods where the proper calculation of Mr. Carroll's release date would be tolled and therefore would extend what would be the purely calendar-day calculation of his release date." Id.

But state defendants provide no way for the Court to determine whose calculation is correct. Mr. Brown's calculations add up to a total of 845 days by which plaintiff's sentence should have tolled, see Dkt. #32 at 3, but he estimates that plaintiff's release date should have been December 11, 2005, Brown Decl. ¶ 11, roughly 120 days after the state court deemed his

ORDER FOR FURTHER BRIEFING - 4

sentence should have been terminated. This discrepancy indicates that the state court considered at least some of the time as tolled and did not release plaintiff based on "what would be the purely calendar-day calculation of his release date," Brown Decl. ¶ 9. While the Court can assume that Mr. Brown's calculation is based on a rigorous examination of "a complex web of sentences, statutes and regulations," Haygood v. Younger, 769 F.2d 1350, 1353 (9th Cir. 1985), the only basis for defendants' assertion that the state court miscalculated plaintiff's release date is Mr. Brown's stated opinion. Without any information or records showing when plaintiff was sentenced, when his supervision should have tolled, how the state court arrived at its release date, or how Mr. Brown calculated a later release date, the Court is ill-equipped to render a determination on when plaintiff's sentence should have expired. Certainly, state defendants have not provided sufficient evidence for the Court to say the state court was incorrect in its calculation.[4]

Whether plaintiff suffered a constitutional deprivation by being incarcerated beyond the termination of his sentence is critical to the Court's determination of whether state defendants are liable under § 1983. In Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1989), the Third Circuit outlined the elements of a § 1983 claim in this context:

> [A] plaintiff must first demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under circumstances indicating that his or her

---

[4] Contrary to plaintiff's assertion, state defendants are not collaterally estopped from disputing the state court's determination. Defendants were not named parties in plaintiff's state criminal case. See Hansberry v. Lee, 311 U.S. 32, 40 (1940) ("[O]ne is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process."). Nor were defendants in privity with a party to plaintiff's violation hearing; defendants had no personal interest or stake in the outcome of plaintiff's criminal proceeding. State defendants' disagreement with the state court's findings is a viable defense and presents a genuine issue of material fact.

ORDER FOR FURTHER BRIEFING - 5

> response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must demonstrate a causal connection between the official's response to the problem and the infliction of the unjustified detention.

885 F.2d at 1110. An analysis of these three elements does not warrant summary judgment. The Court cannot find as a matter of law that state defendants had no knowledge of plaintiff's concern that his sentence had been miscalculated. Plaintiff complained to defendants in February, June, and August of 2005. See Compl. at 4; Dkt. #45, Ex. I at 4-7; Dkt. #45, Ex. M. at 9; Dkt. #45, Ex. P. Although plaintiff's estimation of his release date post-dated the state court's determination, plaintiff's evidence suggests that state defendants were on notice "of the risk that unwarranted punishment . . . would be[] inflicted," Sample, 885 F.2d at 1110. Moreover, as is further explained below, the Court does not have enough information to ascertain what action was taken to investigate plaintiff's concern and by whom. Finally, the Court can render no judgment on state defendants' § 1983 liability without knowing whether defendants' action or inaction caused an unjustified detention. If plaintiff was in fact released before his properly-calculated release date, then his § 1983 claim for unlawful detention must fail. If the state court was correct in finding that plaintiff's sentence had already expired, then plaintiff may have a viable claim against some or all defendants. Therefore, because plaintiff's proper release date remains in dispute, the Court cannot order summary judgment on state defendants' § 1983 liability.

**2. Qualified immunity**

The defense next contends that "even if plaintiff can establish that he was subjected to a constitutional deprivation, State defendants are entitled to qualified immunity." Dkt. #32 at 7. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800,

818 (1982). In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-part test to resolve claims of qualified immunity. First, the Court must inquire whether "the facts alleged show the [government official's] conduct violated a constitutional right[.]" 533 U.S. at 201. Second, assuming the first step is satisfied, the court must ask "whether the right was clearly established." Id. Earlier this year, the Supreme Court reconsidered its holding in Saucier and concluded that "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 129 S.Ct. 808, 818 (2009).

State defendants focus on the second prong of the Saucier inquiry and assert that they reasonably relied upon state statutes and DOC policy in calculating plaintiff's statutory maximum release date. See Saucier, 533 U.S. at 205 ("If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense."); see also Orin v. Barclay, 272 F.3d 1207, 1214 (9th Cir. 2001). However, defendants' qualified immunity argument rests on the same evidence as their claim that plaintiff was released too early. Once again state defendants point to Mr. Brown's declaration stating that certain periods of time should have tolled during plaintiff's supervision, and once again the Court has no way of discerning whether Mr. Brown's estimation is accurate or reasonable.

Moreover, Mr. Brown was assigned as plaintiff's community corrections officer only after plaintiff was released in August 2005, and the Court can only assume that his review of plaintiff's history post-dated the August hearing. There remains a genuine dispute as to what state defendants told the sentencing judge about plaintiff's relase date at the August 2005 hearing. On the one hand, the record contains e-mails between plaintiff's then-community corrections officer Ms. Lee and records manager Sharon Dahlstom indicating that, on August 18, 2005, Ms. Dahlstrom beleived that plaintiff's release date should have been January 13, 2006.

ORDER FOR FURTHER BRIEFING - 7

Dkt. #45, Ex. P. According to state defendants, after the sentencing judge ordered a review of the records, see Dkt. #45, Ex. M at 9, DOC employees suggested a date for the expiration of plaintiff's sentence but "the State sentencing court later determined its own date, which was different from the State defendants'." Dkt. #32 at 8.[5] On the other hand, plaintiff claims that "[o]n August 31, 2005, both the prosecuting attorney and . . . Mary Lee each presented their individual calculations; and, each showed that the plaintiff's sentence had expired on August 10, 2005; three weeks earlier, just as the plaintiff claimed." Compl. at 11; see also Dkt. #56 at 2 ("[I]t was both DOC and the prosecutor that told the plaintiff's sentencing court/judge that the plaintiff's "A" cause statutory maximum had already expired."); id. at 5 ("[I]t was DOC records th[at] proved that the plaintiff had been confined beyond his lawful sentence."). The record before the Court offers no objective evidence about what was said before the sentencing judge on August 31, 2005 or how the judge arrived at his conclusion,[6] and the Court is in no position to weigh the credibility of either party's version of events at the summary judgment stage, see Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). In sum, defendants' claim that they reasonably believed plaintiff had several months remaining on his sentence leads to the same dead end as their substantive defense. Without any evidence regarding the reasonableness of defendants' calculation or the consistency of their belief about plaintiff's release date, the Court cannot simply take defendants' at their word and allow them qualified immunity.

---

[5] State defendants do not indicate precisely what date they suggested to the sentencing judge.

[6] Plaintiff repeatedly points to a single entry in his community corrections file as proof that DOC records proved that his sentence had expired, but this entry does nothing to clarify what happened at the August 31, 2005 hearing. See Dkt. #45, Ex. M. at 8 ("In front of Judge Lum this date, no luck getting further input from records, copy of e-mail results of calculations done by Sharon Dahlstrom records entered into court file as well as records created by prosecutors office, Judge decides upon review time has expired on ["A"] cause and terminated....").

ORDER FOR FURTHER BRIEFING - 8

In disputing the qualified immunity defense, plaintiff correctly emphasizes defendants' duty to investigate his claim that they had miscalculated his release date. In response, state defendants insist that even if they had conducted an investigation into plaintiff's proper release date when he first raised his concern, "plaintiff would not have been released prior to the sentencing court's order on August 31, 2005." Dkt. #61 at 6. But "the question whether an investigation would have resulted in [plaintiff's] release" goes to the substantive § 1983 claim, Alexander v. Perrill, 916 F.2d 1392, 1397 n.9 (9th Cir. 1990); it does not address whether defendants did what they were legally required to do in order to justify application of the qualified immunity defense, id. at 1396; see id. at 1397 n.9 ("Alexander's right to an investigation is, of course, wholly independent of his right to be released from prison. . . . Here, we are not concerned with whether the plaintiffs can ultimately establish liability, only with whether the defendants' conduct is protected by the doctrine of qualified immunity.").

The record before the Court is scant regarding the nature of any investigation undertaken by state defendants. Defendants maintain that they did investigate plaintiff's alleged unjustified detention. Dkt. #61 at 7. Offering no evidence of their own to support this contention, defendants assert that "[p]laintiff's own evidence provides proof of such investigation." Id. Defendants point to Ms. Lee's chronological entries in plaintiff's file stating that she inquired about the proper calculation several times. Dkt. #45, Ex. I. But the Court has very little information on whether Ms. Lee fully complied with any duty to investigate or whether she contacted the right authorities. They also rely on Ms. Dahlstrom's emails showing she "consistently . . . calculated [the release] date to be January 13, 2006." Dkt. #61 at 7 (citing Dkt. #45, Ex. P). But all the emails reveal is that, over the course of two days, Ms. Dahlstrom reported the same release date to Ms. Lee. They do not reveal the process by which she arrived at that date. The fact that some defendants sought some information and arrived at an answer does not alone constitute grounds for qualified immunity. Cf. Alexander, 916 F.2d at 1399

("[T]he continued reliance on the Central Office's memorandum without further investigation constituted a clear breach of a well-established duty."). Plaintiff's evidence sheds no greater light on the extent of any investigation. Plaintiff asserts that defendants failed to investigate his claim whatsoever, Dkt. #56 at 10, but none of the evidence he relies upon demonstrates defendants' refusal to investigate. Moreover, plaintiff contends that grievance program manager Dean Mason "did not look into the plaintiff's allegations at all; he just dismissed the plaintiff's complaints out of hand." Compl. at 10. But the only proof plaintiff provides is a form letter signed by Mr. Mason stating that plaintiff's complaints "are not grievable issues." Dkt. #4, Ex. B. The Court has no information on what investigation Mr. Mason actually undertook to arrive at that conclusion or if he even had a duty to investigate sentence computations.

Before the Court can decide whether state defendants are entitled to qualified immunity because they reasonably believed they acted in accordance with their legal duty in light of clearly established law, it needs to have more information on any investigation efforts that were undertaken. In Sample, the Third Circuit relied on several findings of fact. First, the Court relied on the role of the defendant; after examining the defendant's job description, the Court concluded that he "had the responsibility to review inmates' sentencing status and the authority to direct the release of inmates whose time had been served." Sample, 885 F.2d at 1110. Here, the Court has no information on which if any of the state defendants had a duty to investigate plaintiff's sentence computation. Second, the Sample court looked to the standard operating procedures regarding sentence status problems and whether the defendant had abided by them. Id. at 1111. Here, the record provides no evidence on what guidelines governed any such investigation and the extent to which any of the defendants followed them. Finally, the Sample court had information on precisely what steps the defendant took in response to the plaintiff's request. See id. ("His sole act in response to Sample's inquiry was to contact Judge Sabo[.]"); cf. Alexander, 916 F.2d at 1394 (court states as fact that "neither of the two officials made any

ORDER FOR FURTHER BRIEFING - 10

further inquiry regarding Alexander's claims"). Here, the Court has hints and suggestions of what steps were taken, but no concrete facts.[7]

The Court finds that justice will be better served by ordering further briefing on these matters instead of deciding the summary judgment motion on the paltry evidence provided. In essence, the Court's review of the record as it stands has yielded more questions than it has answers. To the extent the answers to these questions indicate that any or all of state defendants are entitled to qualified immunity, it is appropriate to decide the matter before proceeding to trial. See Saucier, 533 U.S. at 201 (qualified immunity "is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation") (internal quotation marks omitted).

## III. CONCLUSION

State defendants' substantive defense of plaintiff's § 1983 claim is not properly supported by the evidence; therefore the Court finds that summary judgment in their favor is not appropriate on this basis. State defendants' qualified immunity defense is not supported by any evidence by which the Court could determine whether each defendant individually acted in accordance with his or her legal duty. Therefore, the Court hereby ORDERS both parties to provide further briefing on the issue of qualified immunity. Each brief must be no longer than 20 pages, although the parties are permitted to attach exhibits in excess of 20 pages to support their positions. **The briefs must be submitted no later than September 4, 2009.**

The Clerk of the Court is directed to renote state defendants' motion for summary

---

[7] Moreover, qualified immunity is not a broad shield that automatically protects all state defendants because all allegedly shared the same reasonable belief. Qualified immunity must be decided with regard to each individual defendant based on his or her duty to act and his or her conduct. See Cunningham v. Gates, 229 F.3d 1271, 1289 (9th Cir. 2000) (requiring district court to "analyze the acts of each individual defendant in its qualified immunity analysis").

ORDER FOR FURTHER BRIEFING - 11

judgment (Dkt. #32) for Friday, September 4, 2009.

DATED this 10th day of August, 2009.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER FOR FURTHER BRIEFING - 12