UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CARROLL,

    Plaintiff,

    v.

MARY J. LEE *et al.*,

    Defendants.

No. C08-975RSL

ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on "State Defendants' Motion for Summary Judgment," Dkt. #32. Mary J. Lee, Brooks Raymond, Dean Mason, Laura Dyer, Sharon Dahlstrom, and John/Jane Doe I (collectively, "state defendants") each contends that plaintiff's 42 U.S.C. §§ 1983 and 1985 claims should be dismissed either because plaintiff cannot demonstrate that state defendants subjected him to a constitutional deprivation or because defendants are entitled to qualified immunity. On August 10, 2009, the Court ordered further briefing on the motion. Dkt. #62. For the reasons set forth below, the Court grants in part and denies in part state defendants' summary judgment motion.

## II. DISCUSSION

**A. Background**

On March 18, 1994, plaintiff was sentenced in King County Superior Court to 84 months confinement and 24 months community placement, or supervision, for a rape conviction. Plaintiff alleges that, while he was on supervision, state defendants caused him to be punished twice for the same violation and to be incarcerated longer than he should have been. Specifically, plaintiff alleges that state defendants miscalculated the "Statutory Maximum Sentence Expiration Date" of his sentence. Compl., Dkt. #4 at 4, 11. He told defendants beginning in February 2005 that they had made a mistake in calculating the sentence expiration for his rape conviction. Id. at 4. Plaintiff alleges that they ignored his complaints and, in March 2005, began conspiring to have him serve more time. Id. at 4-5, 13.

Plaintiff states that he wrote to Department of Corrections ("DOC") officials on June 15, 2005, alleging that Mr. Raymond and Ms. Lee had set him up for two violations, manipulated facts to have him punished twice for the same violation, and conspired to have him confined longer than his sentence required. Id. at 9. He also stated in the letter that he believed that his sentence expired in October 2005. Id. According to plaintiff, the officials either forwarded on his grievances without action or denied them without investigation. Id. at 8-9. Plaintiff received the denial of his grievances on July 15, 2005. Id. at 10.

Plaintiff was again incarcerated for a supervision violation on July 12, 2005. Id. He alleges that, at a violation hearing on August 30, 2005, DOC employees improperly sought to extend plaintiff's incarceration beyond his sentence expiration date. Id. When plaintiff's counsel objected, the state trial court ordered the DOC employees and the prosecuting attorney to calculate plaintiff's sentence expiration date. Id. The following day, the state trial court determined that plaintiff had hit the statutory maximum on his rape conviction sentence on

August 10, 2005; it terminated plaintiff's supervision on that cause and released plaintiff from custody. Dkt. #45, Ex. J, K.

In response to plaintiff's lawsuit filed under 42 U.S.C. §§ 1983, 1985 and 1986 claiming conspiracy and unlawful detention for the period between August 10 and August 31, 2005, state defendants moved for summary judgment. Dkt. #32. State defendants claimed that plaintiff had not in fact reached his statutory maximum release date as of the August 31, 2005 hearing, id. at 6, and that, even if he had, they are entitled to qualified immunity because they reasonably believed they had correctly calculated his release date, id. at 8. On August 10, 2009, the Court ordered further briefing after stating that defendants had not provided enough evidence either that plaintiff had been released prior to his properly calculated statutory maximum release date or that their beliefs regarding his release date were reasonable. Dkt. #62. Both plaintiff and state defendants submitted supplemental briefs and evidence. Dkt. ##64, 71.

**B. Analysis**

**1. Unlawful Detention**

The first question is whether plaintiff was unlawfully detained between August 10 and August 31, 2005. The Court finds that state defendants are not entitled to summary judgment on this issue.

Washington law provides that a sentence shall be tolled for any period of time during which the offender has absented himself from confinement or supervision "without the prior approval of the entity in whose custody [or supervision] the offender has been placed." RCW 9.94A.171. Under the tolling statute, a sentence does not run while the offender is on escape status or when he is confined on another charge. See RCW 9.94A.171(1) ("A term of partial confinement shall be tolled during any period of time spent in total confinement pursuant to a new conviction or pursuant to sanctions for violation of sentence conditions on a separate felony

conviction."); State v. Acrey, 97 Wn.App. 784, 788 (1999).

In its August 10, 2009 Order, the Court noted that it was not clear what information was before the state court at the August 31, 2005 hearing or how the state court arrived at its conclusion that plaintiff's statutory maximum release date was August 10, 2005. Dkt. #62 at 7-8. State defendants provide very little clarification in their supplemental brief. See Dkt. #64 at 5 (maintaining that state court's calculation was incorrect without revealing the basis for the state court's calculation). Plaintiff's brief, however, directly addresses this question. According to the evidence provided by plaintiff, it appears that the state court's calculation was accurate.

Plaintiff submits that the DOC documents defendant Lee presented to the state court at the August 2005 hearing included (1) the August 2005 e-mails between Ms. Lee and Ms. Dahlstrom, Dkt. #45, Ex. P, and (2) the violation report written by Ms. Lee on July 22, 2005, Dkt. #71, Attach. 1. The violation report details the number of violations plaintiff committed while on supervision for his rape conviction. Dkt. #71, Attach. 1 at 1-2 (listing seven violations and their corresponding sentences for confinement). The heading of this report indicates that the "termination date" of plaintiff's sentence was "1/13/2006 Tolling." Id. at 1. Ms. Dahlstrom's e-mails to Ms. Lee indicate that the prison time plaintiff served on his sentence before his release to community placement was 2554 days and that plaintiff had served 577 days on active supervision. Dkt. #45, Ex. P at 1-2. The e-mails further indicate that, as of August 17, 2005, plaintiff owed 153 days on community placement and that his scheduled end date for community placement was January 13, 2006. Id. Plaintiff demonstrates that when the original jail time (2554 days) is added to the period of completed supervision (577 days) and to the periods of jail time for plaintiff's seven violations along with the time he spent in jail awaiting the August 2005 hearing, plaintiff had served as much as 3913 days on his conviction. Dkt. #71 at 5. Plaintiff

ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

further explains that an offender who is sanctioned to jail for violating the terms of his supervised release usually receives one-third off of that jail time. Id. at 4. When this calculation is applied to the jail times he served for his violations, he calculates 3673 days served on his rape conviction. Id. at 5. This figure closely corresponds to the total days Judge Lum calculated when he released plaintiff. Dkt. #45, Ex. J at 1 ("[T]he defendant has served the statutory maximum for this offense (3094 days confinement + 577 days of active supervision = 3671 days) on the statutory maximum of 10 years. This Court has no jurisdiction to take any further action.").

State defendants do not address the total jail time plaintiff actually served on his conviction. Instead, they focus on the periods when plaintiff's sentence tolled because he was unavailable for supervision. State defendants submit the declaration of Leaora McDonald, Records Management Supervisor for the DOC. Dkt. #68. Ms. McDonald indicates precise times when plaintiff was unavailable for supervision and concludes that his proper release date should have been January 6, 2006. Id. ¶ 5. Notably, the dates and lengths of plaintiff's unavailability provided by Ms. McDonald appear to be different than the data put forth by Jeffrey Brown as part of state defendants' original summary judgment motion. Compare Dkt. #34 ¶ 9 with Dkt. #68 ¶ 5. But regardless of this discrepancy, the fact that certain periods had tolled plaintiff's supervision does not address, let alone undo the fact that plaintiff had served a total of 577 days on active supervision and at least 3094 days in custody on his rape conviction, indicating that he was detained for at least twenty-one days beyond the ten-year statutory maximum sentence.

Ms. Dahlstrom's e-mails suggest that DOC considered the jail time plaintiff received for his supervision violations to toll the statutory maximum sentence. See Dkt. #45, Ex. P at 1 ("Jail

time [of 2554 days] is for the pre prison portion of the equation. All post prison jail time is included in the tolling and the 153 days remaining on the community placement – PRS."). But to the extent the DOC tolled the periods of confinement due to plaintiff's violations of supervision conditions on the same conviction for which he was sentenced, their calculations were wrong. As stated above, a sentence tolls only when a person is confined on another charge. See State v. Phelan, 100 Wn.2d 508, 516-17 (1983), superseded by statute on other grounds, RCW 9.94A.728 ("With regard to credit against maximum and mandatory minimum sentences, . . . we rejected any distinction between presentence and postsentence incarceration [.] . . . In sum, we hold that the State must give a prisoner credit for all jail time in connection with a conviction for which he or she is eventually sentenced to prison."). State defendants assert that "[i]f the offender is not serving the sentence, then the statutory maximum simply does not run." Dkt. #61 at 3. But according to the evidence provided by plaintiff, plaintiff *was* serving his sentence while in jail for his supervision violations, and those days are applied to the statutory maximum.

State defendants maintain that plaintiff has not satisfied the elements he must prove in order to establish a constitutional violation, namely "(1) knowledge of the risk of unwarranted punishment; (2) failure to act on that knowledge based on 'deliberate indifference,' and (3) causal connection between the deliberate indifference and the infliction of the unjustified detention." Dkt. #64 at 2 (citing Sample v. Diecks, 885 F.2d 1099, 1110 (3d Cir. 1989)). According to state defendants, plaintiff has failed to offer admissible evidence that defendants Dyer, Mason or Dahlstrom had knowledge of the risk of unlawful detention. Id.

Defendant Dahlstrom certainly had knowledge of the risk of unjustified punishment. Upon receiving Ms. Dahlstrom's calculation via e-mail, Ms. Lee "wonder[ed] if the Jail times are correct" given the order modifications [apparently regarding the periods of confinement

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6

imposed for his supervision violations], Dkt. #45, Ex. P at 2, and mentioned that "the defense was wondering how much time post prison has also been actual jail time," id. at 1. Ms. Dahlstrom was clearly on notice that there were questions and confusion surrounding plaintiff's release date, specifically regarding the inclusion of postsentence jail time. There is no indication that plaintiff himself needed to communicate his concerns directly to Ms. Dahlstrom in order for her to have knowledge of the risk of unlawful incarceration.

The record also indicates that defendant Dyer had knowledge of the risk of unwarranted punishment. Ms. Dyer and Mr. Mason were notified by plaintiff's letter that Ms. Lee was allegedly advocating for a 9-month jail term while plaintiff maintained that "I do not have 9 months left in the system as my statutory maximum expires in October 2005." Dkt. #65, Ex. 1 at 2. Ms. Dyer states that even though she "did not read Mr. Carroll's letter to be a challenge to the calculation of his statutory maximum release date," Dkt. #65 ¶ 3, she abided by her "standard practice" by conducting her own calculation of the maximum release date, id. ¶ 4. According to Ms. Dyer, "I typically conduct this analysis in order to ensure that the sanction that had resulted from the violation hearing under our jurisdiction did not end after a . . . statutory maximum date." Id. Ms. Dyer's "standard practice" of calculating the release date demonstrates her awareness of the risk of unlawful detention as a matter of course in her position as Correctional Records Supervisor. Although plaintiff's estimation of his release date post-dated the state court's determination, state defendants have provided no authority that they must have knowledge of the specific risk of unlawful detention after August 10, 2005. Awareness that the proper release date was in question is enough.

Defendant Mason's knowledge is a closer question. He was aware that plaintiff believed his release date to be October 2005 but did not independently calculate the sentence maximum

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7

release date. Dkt. #67 ¶ 5. Whereas Ms. Dyer's job was to be aware of the risk of unlawful detention when plaintiff filed his grievance letter, it is not clear whether Mr. Mason was on notice of this risk when plaintiff had not specifically alleged a miscalculation of his statutory release date. Given the ambiguity, the Court finds that summary judgment on defendant Mason's knowledge of the risk is not appropriate.

In sum, the evidence before the Court indicates that plaintiff was detained beyond his statutory maximum release date. At the very least, therefore, plaintiff has demonstrated a genuine issue of material fact on whether state defendants violated his civil rights.

**2. Conspiracy**

Plaintiff alleges that on or about March 18, 2005, defendants Lee and Raymond began conspiring with plaintiff's appointed counsel, Kara Dansky, to deprive plaintiff of his civil rights. Compl., Dkt. #4 at 13.[1] In his response brief, plaintiff contends that on April 12, 2005, defendants "deliberately and intentionally misrepresent[ed] and conceal[ed] material facts . . . [which] cause[d] the plaintiff to be put in jail for a violation that they knew he was not guilty of." Dkt. #56 at 12-13.[2]

To prove a conspiracy under § 1983, plaintiff must establish "an agreement or meeting of the minds to violate [his] constitutional rights[.]" Woodrum v. Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989). To establish a section 1985(3) claim, a plaintiff must prove: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of

---

[1] The Court has already granted summary judgment to defendant Dansky on plaintiff's conspiracy claim. Dkt. #63.

[2] To the extent plaintiff alleges that this conspiracy ended on April 12, 2005, his conspiracy claim is barred by the three-year statute of limitations governing §§ 1983 and 1985 claims. Cf. Dkt. #63 at 5.

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8

1 persons of the equal protection of the laws, or of equal privileges and immunities under the laws;
2 and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his
3 person or property or deprived of any right or privilege of a citizen of the United States." Sever
4 v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992) (quoting United Bhd. of Carpenters &
5 Joiners of Am. v. Scott, 463 U.S. 825, 828-29 (1983)).

State defendants have met their burden on summary judgment regarding plaintiff's conspiracy claims.[3] Plaintiff has provided no evidence of a "meeting of the minds" of the alleged conspirators to unlawfully detain him. Plaintiff asserts that defendants Lee, Raymond and Dansky "had to know" that they were deceiving the Court and that "it was no accident" that they concealed evidence from plaintiff to have him incarcerated. Dkt. #56 at 14. But plaintiff's bare allegations and speculations are not enough to demonstrate an agreement between the defendants. See Karim-Panahi v. L.A. Police Dep't, 839 F.2d 621, 626 (9th Cir. 1988) ("A claim under [§ 1985] must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient."). As indicated above, defendants Lee and Raymond may have miscalculated plaintiff's sentence. But even if they did so "with malicious intent," Dkt. #56 at 13, "the evidence adduced must demonstrate more than the mere fact that [they] did or said the same thing; the evidence must actually point to an agreement." Marullo v. City of Hermosa Beach, 317 Fed. Appx. 626, 630 (9th Cir. 2008) (citing Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir.1998)).

---

[3] State defendants present no argument regarding plaintiff's conspiracy claims in their summary judgment motion. Rather, they raise the issue for the first time in their reply brief. See Dkt. #61 at 9. "[A] district court has the discretion to consider an argument first raised in a reply brief." Lane v. Dep't of Interior, 523 F.3d 1128, 1140 (9th Cir. 2008). Because plaintiff directly addresses the conspiracy issue in his response brief, Dkt. #56 at 12 -15, the Court finds that plaintiff is not prejudiced by the Court's consideration of his conspiracy claim.

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9

1 Therefore, state defendants are entitled to summary judgment on plaintiffs § 1983 and §
2 1985 conspiracy claims.

### 3. Qualified Immunity

"Determining whether officials are owed qualified immunity involves two inquiries: (1) whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the officer's conduct violated a constitutional right; and (2) if so, whether the right was clearly established in light of the specific context of the case." al-Kidd v. Ashcroft, 2009 WL 2836448, at *12 (Sept. 4, 2009) (citing Saucier v. Katz, 533 U.S. 194, 201 (2001)). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). State defendants contend that they are all entitled to qualified immunity because, even if their alleged failure to properly calculate plaintiff's release date resulted in unlawful detention, they "could nevertheless have reasonably but mistakenly believed that [their] . . . conduct did not violate a clearly established right." Dkt. #64 (quoting Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001)).

State defendants maintain that defendants Dahlstrom, Lee and Raymond reasonably relied on Washington statutes and DOC policy, "both of which provided that when an offender is unavailable for supervision, his time is tolled," in calculating plaintiff's release date. Dkt. #32 at 7-8. There is no dispute that an offender's sentence tolls when he is unavailable for supervision. Plaintiff does not even dispute that he was unavailable for supervision for significant periods of time. But this issue seems beside the point where the DOC records indicate (1) that plaintiff was jailed multiple times during his period of supervision, and (2) he had completed 577 days of active supervision. These facts alone suggest that plaintiff had reached his statutory maximum release date as of August 10, 2005. Once the time actually served on the conviction exceeds the

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10

1  statutory maximum, the question of other periods of time that were tolled becomes irrelevant.
2  Assuming miscalculation on behalf of defendants, to the extent defendants relied on the tolling
3  statutes and policy to the exclusion of the DOC record evidence regarding the amount of time
4  already served by plaintiff, their beliefs regarding plaintiff's release date were not reasonable.
5  Moreover, to the extent defendants tolled the periods of time during which plaintiff was
6  incarcerated for supervision violations with regard to his rape conviction, their calculations
7  violated clearly established law.[4]

Assuming defendant Mason knew of the risk of plaintiff's unlawful detention, however, plaintiff has not provided evidence that he failed to act reasonably in accordance with his job description. Plaintiff's letter to Mr. Mason alleged that Ms. Lee was trying to have him jailed for nine months even though he did not have nine months left on his statutory maximum sentence. Dkt. #65, Ex. 1 at 2. According to plaintiff's letter, "Mary Lee and Brooks Raymond conspired to get me sentenced in such a way that I would be kept in jail the rest of my DOC time; at least all but a few weeks." Id.; see also id. at 3 ("They devised the scheme to keep me in jail until my time was completed."). Upon receiving plaintiff's letter, Mr. Mason investigated plaintiff's chronological entries, Dkt. # 67 ¶ 5, but did not independently conduct a sentence calculation. Nothing in the job description of a DOC Grievance Program Manager indicates that Mr. Mason was responsible for calculating the maximum release date when an offender has not specifically complained of a miscalculation. The Court finds that defendant Mason is entitled to qualified immunity.

---

[4] State defendants do not specifically indicate whether they considered this time tolled; they do not address these periods of incarceration at all. However, their pleadings before the Court indicate their recognition that a sentence is tolled "while an offender is confined *on another charge*," Dkt. #61 at 2-3 (emphasis added), and is not tolled while an offender is confined on the same charge.

ORDER GRANTING IN PART AND
DENYING IN PART STATE
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11

## III. CONCLUSION

For all of the foregoing reasons, state defendants' motion for summary judgment (Dkt. #32) is GRANTED with respect to plaintiff's § 1983 and § 1985 conspiracy claims, GRANTED with respect to defendant Mason, and DENIED with regard to plaintiff's § 1983 claims for unlawful detention against defendants Lee, Raymond, Dahlstrom, Dyer and John/Jane Doe I.[5]

DATED this 2nd day of October, 2009.

*/s/ Robert S. Lasnik*

Robert S. Lasnik
United States District Judge

---

[5] The parties have presented the Court with no information regarding John/Jane Doe I, therefore summary dismissal of the claims against him/her is inappropriate.

ORDER GRANTING IN PART AND DENYING IN PART STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12